R. M. POMEROY, Appellant, v. FARMERS SAVINGS BANK OF SHELBY, Appellee.

No. 38833.

APRIL 2, 1929.

Bennett Cullison and E. M. Miller, for appellant.

White & White, for appellee.

ALBERT, C. J.—As above noted, a jury was waived, and the case tried to the court; and, this being a law action, the decision of the court has the force and effect of a verdict of a jury as to all fact questions involved. It is also to be kept in mind that this is an action between the payee of the notes in controversy and the immediate indorser.

We have had much difficulty in determining the facts and issues in this case, as the evidence covers a long series of transactions, not only with the Farmers Savings Bank of Shelby, but with another bank, in which Pomeroy, the plaintiff, was an officer. About 100 promissory notes were introduced in evidence and were referred to in the testimony; also many bank records. At many places in the testimony, the witnesses referred to promissory notes which were in no way identified, and we are unable to determine to which of the various notes their testimony applies; and equally so as to many references made to various books of the bank.

So far as we are able to understand this record, the district court was warranted in reaching the following conclusions as to the facts: One C. E. Caldwell had been a consistent and persistent borrower, not only from the defendant bank, but from the Corley Farmers Savings Bank, of which Pomeroy was also an officer. These borrowings extended over a number of years as to both banks; and, so far as we are able to determine from the record, some of Caldwell's notes were transferred from one bank to the other. His borrowings at times exceeded the limit which banks were allowed to loan to any one individual, and the excess loans to him were, under the direction of the state banking department, required to be taken care of and taken out of the bank. Up to 1921, the plaintiff, Pomeroy, had, for a number of years, been cashier of defendant bank, and on January 1, 1921, he became president of said bank, and sold his stock therein in the latter part of 1922.

Caldwell owned two farms: one consisting of over 500 acres,

known as the "Home Farm," and another consisting of 160 acres, referred to in the record as the "Heise Farm," with which latter farm we are not concerned. The Heise Farm was covered by a mortgage to the defendant, which will hereinafter be more fully explained.

In December, 1917, Caldwell had taken care of about $25,000 of his indebtedness to the bank with a loan on the Home Farm. Aside from this, he was indebted to the defendant bank on various notes in the amount of about $14,000, much of which was in excess of the limit the bank was allowed to loan to him. At that time, the plaintiff, Pomeroy, turned in to the bank notes and securities belonging to him personally, and took credit therefor in the sum of $17,000, and on the same day, drew against his account a check in the sum of $17,000 in payment for the Caldwell notes. Later, other indebtednesses arose, and, on the 14th day of August, 1920, he executed to defendant bank a mortgage on the Heise farm, also notes, for $14,000. This mortgage covered an indebtedness of $4,000 owed to Pomeroy personally, $6,000 of which Caldwell owed the bank on a note which Pomeroy's daughter had taken out of the assets of the bank by putting up her individual note therefor, and $4,000 still due the bank. Pomeroy's $4,000 above referred to, covered by said mortgage, consisted of two notes of $2,000 each, which are the subject of this action. One of these notes was indorsed to Pomeroy by the defendant, Farmers Savings Bank, "By R. M. Pomeroy, President." The other bore the indorsement, "Pay to the order of John Kern," signed "Farmers Savings Bank, by R. M. Pomeroy, President;" and plaintiff alleges that he is now the owner and holder of said note by purchase thereof from John Kern and the Farmers Savings Bank of Shelby, Iowa. The plaintiff's allegation is that the defendant sold and delivered the first note to the plaintiff. As to the second note, the allegation is that the defendant sold and delivered said note to one John Kern. The record is very hazy and unsatisfactory relative to this mortgage and these notes, but it may fairly be inferred therefrom that, when security was demanded from Caldwell for these various amounts, a single mortgage was executed, accompanied by new notes, to cover the entire indebtednesses owed both to the bank, to the plaintiff, and to his daughter; that, after the various indebtednesses were thus secured, each party—the

bank, the plaintiff, and his daughter—had the new notes representing their respective shares of the indebtedness all secured by this one mortgage.

The defendant bank asserts, and the evidence in the case supports its assertion, that at no time was it the owner of, nor did it have any interest in, these two notes on which suit is brought. All it claimed at any time was the $4,000 which was still an indebtedness due to it at the time the mortgage was given. Since the bank in fact never owned nor had any interest in these notes on which plaintiff sued, the indorsement of its name on said paper would be without consideration. That this was the real situation we have no doubt, under the record. At the time the mortgage was executed, the bank claimed that there was due it $4,000, although the mortgage was executed for $14,000. A prior mortgage on the Heise Farm was then foreclosed, and the land sold, and the defendant redeemed from the sale. At this point, the plaintiff, Pomeroy, asserted that he had some rights under the mortgage, and a contract was entered into between him and the defendant, by which it was agreed, in substance, that the bank would sell this land acquired by the redemption to Pomeroy,—defendant having, in the intermediate time, secured a deed for the same,—for an amount in excess of $18,000. In determining this amount, the bank included the amount paid out for redemption, interest, taxes, costs, etc., and the $4,000, with interest, which the bank still held against Caldwell; whereupon, under the contract, this land was deeded to Pomeroy, who executed a mortgage on said land for the above amount. At the same time, Pomeroy's interest in the bank was purchased, and he retired, both as a stockholder and an officer of the bank. It would be rather strange if, in the carrying out of this contract and the retirement of Pomeroy from the bank, he made, in the settlement, no reference whatever, nor any claim, to the notes in controversy herein. Again we call attention to the fact that neither Caldwell nor any third party is involved in this litigation, it being solely between the original parties, the bank, and Pomeroy. Quite elaborate arguments are presented on the right of the president of a bank to indorse paper to himself; also whether any officer of a bank has a right to sell and indorse paper without the action of the board of directors. We

pass all of these questions, as we do not deem them necessary to a determination of the case.

As to the first note sued on, the plaintiff alleges that the defendant bank sold and delivered this note to him. Having reached the conclusion that the defendant bank was never the owner or holder of this note, and never had any interest therein, we find that the plaintiff's allegation in this respect is not supported by the evidence.

As to the second note, plaintiff's allegation is that the bank sold and delivered the same to one John Kern; and the evidence wholly fails to show that the bank ever owned or had any interest in this note, and also abundantly shows that Kern never purchased this note, or, in fact, had anything whatever to do with the same. He specifically testifies to this fact, and no one contradicts him.

Lastly, the purpose of this lawsuit is to hold the defendant bank liable on its purported indorsement on these notes. It is too fundamental to need citation of authority that an indorsement must be supported by a consideration, and want of consideration is always a good defense when suit is brought on an instrument or on an indorsement thereon. Section 9488, Code of 1924, reads as follows:

"Absence or failure of consideration is matter of defense as against any person not a holder in due course, * * * "

The whole record shows that there was no consideration whatever for the purported indorsement of the defendant bank on either of these notes. Plaintiff therefore must fail, not only for want of proof supporting the allegations of his petition, but also because of a lack of any consideration supporting the alleged indorsement on these notes on which he bases his action.

The court trying this case below dismissed the plaintiff's petition, and we are abidingly satisfied with the conclusions reached by him.—*Affirmed.*

EVANS, FAVILLE, KINDIG, and GRIMM, JJ., concur.