CHRISTY A. NELSON et al., administrators, appellees, v. ARTHUR L. NELSON, appellant.

CHRISTY A. NELSON et al., administrators, appellees, v. WILLIAM A. NELSON et al., appellees; ARTHUR L. NELSON, appellant.

No. 48516.

(Reported in 65 N.W.2d 154)

JUNE 15, 1954.

REHEARING DENIED SEPTEMBER 24, 1954.

Frank N. Rasmussen, of Exira, and Dalton & Dalton, of Atlantic, for appellant.

F. A. Royal, of Des Moines, for nonresident alien defendants and for Poul Scheel, Royal Danish Consul.

Jones, Cambridge & Carl, of Atlantic, for plaintiffs and for all other defendants.

Don Savery, of Atlantic, guardian ad litem, for defendants who are minors or incompetent or under legal disability.

OLIVER, J.—The administrators of the estate of John P. Anderson, deceased, instituted a suit in equity against Arthur L. Nelson for an accounting for the profits and jointly owned livestock, grain, etc., under a written stock-share farm lease by

decedent to defendant, of a 280-acre farm in Cass County, and other land not directly involved in the accounting suit. Thereafter plaintiffs, as such administrators, and individually as heirs-at-law of decedent, instituted against said Nelson and more than one hundred other named defendants, suit to partition the property in question and other real estate owned by decedent. In the first suit defendant Arthur L. Nelson filed answer and counterclaim and in the second suit, answer, counterclaim and cross-petition to establish his ownership of the 280 acres in question and the livestock, feed, etc., thereon. The two suits were consolidated and trial was had. This appeal is by defendant Arthur L. Nelson alone and involves only the landlord-and-tenant accounting and ownership issues between him and plaintiffs and other defendants who joined with plaintiffs. For convenience, Arthur L. Nelson will be referred to herein as defendant.

Defendant pleaded an oral contract with decedent, of date January 15, 1935, superseding the written lease of that date and agreeing that defendant would operate decedent's Cass County farm of 280 acres, make improvements and repairs thereon at his own expense, care for the livestock and other personal property thereon, owned in equal shares by defendant and decedent, and pay one half of the net earnings to decedent during decedent's life; and that (we assume although it was not directly pleaded) in consideration therefor, defendant was to become the absolute owner of the 280-acre farm and the jointly owned personal property thereon, at the death of decedent. The main issue is whether this oral contract and its performance were proven. The trial court held defendant had failed to so prove by clear, satisfactory and convincing evidence as required by the rule. Judgment was rendered against defendant accordingly. Hence, this appeal by defendant.

Decedent was a retired farmer. He was unmarried and had no children or close relatives. He died intestate September 9, 1950. Defendant was a distant relative but not an heir-at-law of decedent. Among the lands owned by decedent was a 440-acre farm, composed of the 280 acres here directly involved, in Cass County, and 160 acres in Shelby County. In 1924 and

1925 defendant had rented the 280 acres from decedent for a cash rental. Thereafter until 1935 defendant operated it under an oral stock-share farm lease under which each owned a one-half interest in the livestock, feed and grain and was entitled to one half of the net profits. January 15, 1935, decedent and defendant went to a law office where, after a lengthy discussion, a written Stock-Share Farm Lease was prepared for them.

This lease, with "explanations and suggestions", was drawn upon a printed form. It covers fourteen pages of the record. It recites decedent leases to defendant the 440 acres, describing the 280 acres in Cass County and 160 acres in Shelby County. The term was one year beginning March 1, 1935, and from year to year thereafter until either party should give the other, before any August 1, written notice of termination at the end of the current lease year. The purpose of this stated in the "explanations" was to provide for a longer term than a one-year lease. It may be here said no such notice of termination was given during decedent's life.

The general policy stated in the lease was to raise crops to feed livestock which was to be owned by the parties in equal shares. Among other things, the landlord agreed to keep the buildings in repair, to furnish materials to repair fences and buildings and to pay taxes and insurance on the real estate. The tenant agreed to furnish the farm implements, tools and labor for operating the farm and for ordinary repairs of fences and buildings, to pay the operating expenses, one half of which were to be repaid by the landlord, and to pay the landlord one half of the gross income from the farm.

The lease was then and there executed in duplicate by decedent and defendant and one original was held by each party. At that time and place and in the presence of the lawyers, defendant contends he and decedent orally changed the written lease they had just made and entered into an oral agreement that defendant would bear the expense of improvements and repairs on the 280 acres in Cass County and would pay half the profits to decedent during decedent's life, and that, at decedent's death defendant would become the owner of the 280-acre farm and decedent's half of the livestock and other personal property on

the farm. (Defendant asserts the 160 acres in Shelby County remained under the written lease until 1946 when other land in Cass County was substituted for the Shelby County land. In any event, only the 280-acre tract is here directly involved.)

As to the making of the alleged oral agreement to abrogate the written lease on the 280-acre tract, one of the lawyers testified: "At this point I made this remark to Mr. Anderson, that a contract of this kind should be in writing, and Mr. Anderson looked at me rather suspiciously, and said, 'Ain't my word good?' and I said, 'Yes, your word is good as long as you live, but when you are dead it doesn't amount to so much.' 'Well', he said, 'I will fix that. You lawyers are always looking for a job', and he walked out."

According to this 1952 testimony concerning the 1935 transaction, the parties to the farm lease, prepared by their lawyers after an extended conference, abrogated it in the presence of the lawyers immediately after its execution and delivery, suspiciously and facetiously brushed aside the legal advice that a contract to transfer real estate should be in writing, and orally agreed the tenant should take the farm and livestock upon the death of the landlord, without the written cancellation of, or any endorsement upon, the written lease, or any other written evidence of the new contract. The circumstances depicted in this testimony are most unusual. Its unreasonableness properly may be taken into consideration in determining the correctness of the recollection of the witness and the weight to be given such testimony.

Under the dead man statute, section 622.4, Code of Iowa, 1954, defendant was incompetent to testify to any personal transaction or communication between himself and decedent. Defendant's testimony was taken subject to standing objections to his competency under Code section 622.4, and subject also to various other objections to each question. However, this being an equity suit, rulings on such objections were reserved.

In defendant's direct examination little attention appears to have been given the dead man statute or other rules of evidence. As a result much of his evidence set out in the record was inadmissible. Among other things, he testified to his business relations and dealings with decedent, both prior to

and subsequent to 1935; to the oral agreement claimed to have been made in the lawyer's office January 15, 1935; that he had a further conversation relative to the 280-acre farm and personal property, with decedent alone, later that day, to which defendant was the only witness; that he paid decedent the one half of the profits arising from the farm; that decedent consented to improvements made by defendant, etc.

The objections to the competency of defendant to testify to these and like matters were clearly valid. Upon this point no citation of authorities is necessary. Nor were these objections waived by the cross-examination of the defendant upon the propositions to which he had theretofore testified. In re Estate of Custer, 229 Iowa 1061, 1069, 295 N.W. 848; Donnell v. Braden, 70 Iowa 551, 552, 30 N.W. 777, 778; Worthington v. Diffenbach, 184 Iowa 577, 583, 168 N.W. 257. Hence, such testimony should be disregarded.

The record in this case covers a period of more than fifteen years and contains five hundred pages. Detailed reference to it will not be attempted. In his pleadings defendant set out a statement itemizing about $12,000 in materials and labor alleged to have been furnished by him during this period for improvements on the 280-acre farm. On direct examination he testified at length concerning these items. In his cross-examination various inconsistencies in his claims were developed. Furthermore, there was evidence that, upon decedent's death, defendant at first made no claim to the farm or to the personal property thereon, assisted the administrators in counting the livestock and measuring the grain, and agreed to continue to operate the farm as he had been doing under the terms of the lease. There was evidence also he told the administrators he had spent nearly $1000 for improvements and expected to be repaid.

■■■ Defendant places considerable reliance upon testimony of claimed oral statements by decedent that defendant was to have the farm upon decedent's death. This testimony should be considered under the rule referred to in Bell v. Pierschbacher, 245 Iowa 436, 444, 62 N.W.2d 784, 789, which states:

"We have repeatedly pointed out that evidence of claimed oral statements of a decedent should be closely scrutinized and

cautiously received because it is not susceptible of denial and the witness may not have been capable or desirous of accurately relating what decedent may have said [citing authorities]."

Defendant does not question the well settled rule that an oral agreement for a conveyance of land must be established by clear, satisfactory and convincing evidence. Williams v. Chapman, 242 Iowa 294, 307, 46 N.W.2d 56, and citations.

Our consideration of the entire record requires the conclusion the oral contract claimed by defendant has not been shown by the quantum and quality of proof required by the rule. This conclusion accords with the findings of the trial court which are entitled to substantial weight.

Defendant's contention, first made upon appeal, that he was entitled to judgment on his counterclaim and cross-petition for failure of some opposing parties to plead thereto in one or both the consolidated cases, has been considered and is overruled.

The judgment of the trial court is affirmed.—Affirmed.

All JUSTICES concur.